UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x

THOMAS CONRY et al., individually and
on behalf of all others similarly situated,

                 Plaintiffs,

     -against-

GERBER PRODUCTS COMPANY,
PERRIGO COMPANY PLC, L. PERRIGO
COMPANY AND PBM NUTRITIONALS,
LLC,

                 Defendants,

          and

TARGET CORPORATION,

                 Nonparty Objector.

------------------------------------------------------x

**OPINION & ORDER**

25-mc-4205 (NG) (AYS)

**GERSHON, United States District Judge:**

      Before the court is an appeal seeking modification of a magistrate judge's discovery order. In the underlying antitrust action, a class of retail consumers of store-brand infant formula allege defendants Gerber and Perrigo entered into an Anticompetitive Agreement which gave Perrigo a first right to Gerber's excess capacity of infant formula, allowing Perrigo to block competitors from entering the market for the sale of store-brand infant formula to retailers. There is a related pending suit by P & L Development ("PLD"), one such competitor, against Gerber and Perrigo for the same conduct. *See P & L Dev., LLC v. Gerber Prods. Co.*, 715 F. Supp. 3d 435 (E.D.N.Y. 2024).

      On February 13, 2025, Plaintiffs served nonparty Target with a subpoena. Target is a nationwide retailer that purchases store-brand infant formula from Perrigo and sells it to retail consumers (such as Plaintiffs) under its up&up label. Plaintiffs sought documents and

communications broadly relating to Target's purchase and distribution of store-brand infant formula products. On June 16, 2025, Plaintiffs moved to compel Target's compliance with the subpoena in the District of Minnesota, and on October 22, the case was transferred to this court on Plaintiffs' motion.

On November 20, Magistrate Judge Anne Y. Shields ruled from the bench on the outstanding discovery disputes. She noted the discoverability of documents and communications "that reflect Target's efforts to develop alternative sources of store-brand infant formula." However, concerned with the burden on Target as a nonparty, Judge Shields limited the production to "communications with Gerber, Perrigo, and/or PLD during the time period alleged in the Complaint." Plaintiffs now appeal, seeking a limited modification of Judge Shields' order to "allow for discovery of communications between Target and nonparty potential alternative sources of store-brand infant formula, as well as Target's internal communications about efforts to find an alternative source of store-brand infant formula." Pl's Br. at 1-2.

The appeal presently before the court is thus whether the discovery order was properly limited to external communications between Target and the parties to the litigation. The court heard oral argument on January 14, 2026. Counsel for PLD, Gerber, and Perrigo were present in addition to counsel for Plaintiffs and Target so that the court could explore in-depth the question of relevance for the modification that Plaintiffs seek. For the reasons set forth below, Plaintiffs' appeal is granted.

### I. Legal Standard

#### A. Rule 72 Standard of Review

Pursuant to Federal Rule of Civil Procedure 72(a), "for non-dispositive matters, including discovery disputes, a district court shall reverse a magistrate's order only where it has been shown

that the order is 'clearly erroneous or contrary to law.'" *Arista Recs. LLC v. Lime Grp. LLC*, 2011 WL 781198, at *2 (S.D.N.Y. Mar. 4, 2011) (quoting Rule 72(a)). "A decision is 'clearly erroneous' when the reviewing Court is left with the definite and firm conviction that a mistake has been committed." *Smith v. City of New York*, 754 F. Supp. 3d 581, 583 (S.D.N.Y. 2024) (quoting *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2018 WL 1750595, at *21 (S.D.N.Y. Apr. 11, 2018)). "Pursuant to these standards, a magistrate judge's determinations on discovery matters are entitled to substantial deference." *In re OpenAI, Inc., Copyright Infringement Litig.*, 2025 WL 1652110, at *3 (S.D.N.Y. May 30, 2025) (quoting *R.F.M.A.S., Inc. v. So*, 748 F. Supp. 2d 244, 248 (S.D.N.Y. 2010)).

### B. Nonparty Discovery

"Federal Rule of Civil Procedure 45 allows a party to serve a subpoena for production of documents on a non-party." *Gilead Scis., Inc. v. Khaim*, 779 F. Supp. 3d 300, 309 (E.D.N.Y. 2025). "Subpoenas served on non-parties are subject to the relevance and proportionality requirements of Rule 26(b)(1)." *Id.* After the party issuing the subpoena demonstrates the relevance of the requested documents, the party seeking to quash must demonstrate that production would require disclosure of privileged or protected materials or impose an undue burden. *Id.* (citing Rule 45(d)(3)).

> A court has the discretion to deny discovery requests if it determines that the burden or expense of the proposed discovery outweighs its likely benefit. When balancing the relevance of a particular discovery request against the burden of production, special weight should be given to the burden on non-parties of producing documents to parties involved in litigation. Where, as here, discovery is sought from a non-party, the Court should be particularly sensitive to weighing the probative value of the information sought against the burden of production on the non-party.

*Arista Recs. LLC*, 2011 WL 781198, at *2 (cleaned up).

### II. Discussion

Plaintiffs bring claims under both Section 1 and Section 2 of the Sherman Act. 15 U.S.C. §§ 1, 2. To properly state a claim under either section, "a plaintiff must allege a plausible relevant market in which competition will be impaired." *City of New York v. Grp. Health Inc.*, 649 F.3d 151, 155 (2d Cir. 2011). A Section 1 claim alleging an exclusive dealing agreement, as here, is evaluated under the rule of reason. *United States v. Visa, Inc.*, 788 F. Supp. 3d 585, 609 (S.D.N.Y. 2025). Under the rule of reason, a Section 1 plaintiff must allege either an actual adverse effect on competition or demonstrate an adverse effect indirectly by "establishing that [the defendant] had sufficient market power to cause an adverse effect on competition." *Tops Markets, Inc. v. Quality Markets, Inc.*, 142 F.3d 90, 96 (2d Cir. 1998). A Section 2 plaintiff must allege that a defendant possesses market power in the relevant market. *In re Aluminum Warehousing Antitrust Litig.*, 95 F. Supp. 3d 419, 454 (S.D.N.Y. 2015).

> In the antitrust context, market power has two meanings. In the Section 1 context, market power is the ability to raise prices above those that would be charged in a competitive market. In the Section 2 context, the term "market power" is sometimes used interchangeably with "monopoly power" and is the power to control prices or exclude competition. Monopoly power under § 2 requires, of course, something greater than market power under § 1.

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 714 F. Supp. 3d 65, 96 (E.D.N.Y. 2024) (cleaned up).

At oral argument, the parties were in agreement that at trial Plaintiffs will have the burden of establishing to the jury their market definition as well as Perrigo's market power. Here Plaintiffs' proposed market definition is the sale of store-brand infant formula to retailers within the United States, and it is undisputed that at trial the Defendants will contend that that definition is overly narrow. It is also undisputed that Defendants will challenge Plaintiffs' showing of Perrigo's market power within the alleged market.

Plaintiffs are correct that discovery into Target's efforts to secure alternative potential sources of store-brand infant formula is highly relevant to establishing their proposed market definition and Perrigo's market power. Determining whether the market definition is proper is "a deeply fact-specific inquiry" and generally requires discovery. *Todd v. Exxon Corp.*, 275 F.3d 191, 199-200 (2d Cir. 2001). Target's documents and communications concerning its efforts to secure alternative sources of store-brand infant formula reflect the "commercial realities" faced by retailers, and are relevant to determining whether the Plaintiffs' market definition is consequently proper. *See Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 482 (1992). Moreover, evidence showing how much of the market Perrigo controlled and whether there were in fact competing sellers of store-brand infant formula to retailers obviously bears on whether Perrigo had market or even monopoly power. *See Broadway Delivery Corp. v. United Parcel Serv. of Am., Inc.*, 651 F.2d 122, 129 (2d Cir. 1981) ("[T]he higher a market share, the stronger is the inference of monopoly power."). Target's argument that it is a nonparty to the litigation and that its internal documents and communications as well as communications with other nonparties cannot be relevant to the underlying action misses the mark. Whether or not Perrigo substantially foreclosed the market through the Anticompetitive Agreement depends in part on whether there were other feasible competitors in the market or if, as Plaintiffs allege, Perrigo was the only option from whom retailers like Target could purchase store-brand formula.

The documents and communications of nonparties can certainly be relevant in an antitrust action, such as here. *Cf. Amer Needle Inc. v. New Orleans*, 2012 WL 4327610, at *1-2 (N.D. Ill. Sept. 21, 2012) (finding confidential documents "relevant to determining issues of market definition and market power" and ordering their production despite a nonparty's interest in preserving confidentiality). Target has not offered any reasoned opposition to this analysis of the

relevance of these documents either in its briefing or on oral argument. I cannot accept Target's conclusory statements that the information requested is irrelevant or that Plaintiffs' attempts to obtain such information constitute a "fishing expedition." On the contrary, Plaintiffs have presented particularized bases for believing Target has such documents and communications in its control.

Target's principal argument is instead that the request is overbroad and burdensome. With respect to overbreadth, Plaintiffs have limited their request to documents and communications regarding Target's efforts to find alternative sources of store-brand infant formula. Such a request is adequately tailored to Plaintiffs' need for discoverable information. And although Judge Shields was properly concerned with burden and issues of proportionality when dealing with a nonparty subpoena, when this court pressed Target to explain the burden that granting this appeal would impose, its response was again conclusory and inadequate. The requested discovery concerns a limited universe of documents and communications. Target has already been ordered by Judge Shields to produce communications with Gerber, Perrigo, and PLD. Target has failed to show how expanding its search to include internal analyses and communications with other sources would be disproportionally burdensome where as here Plaintiffs' need for the documents and communications is great. This conclusion is bolstered by the fact that these documents and communications would necessarily be in the exclusive possession or control of Target or the alternative sources. *See Liner Freedman Taitelman Cooley, LLP v. Lively*, 2025 WL 2205973, at *4 (S.D.N.Y. Aug. 4, 2025) ("[I]n evaluating whether discovery on a nonparty constitutes an undue burden, one relevant factor is whether the requested information can be obtained from the parties themselves.") (internal quotation marks omitted).

Even recognizing the substantial deference owed to Judge Shields' prior ruling in this case, I find that Plaintiffs have demonstrated the relevance of and need for these documents and communications while Target has not shown that their production would be disproportionally burdensome.

**III. Conclusion**

For the foregoing reasons, Plaintiffs' appeal is granted to the extent that Judge Shields' order is modified to require Target to produce communications between Target and nonparty potential alternative sources of store-brand infant formula, as well as Target's internal communications, about efforts to find an alternative source of store-brand infant formula.

SO ORDERED.

/s/(NG)
_____
NINA GERSHON
United States District Judge

January 23, 2026
Brooklyn, New York